IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DIANA WILLS,<br><br>Plaintiff,<br><br>v.<br><br>METROPOLITAN NASHVILLE BOARD OF PUBLIC EDUCATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. |

**COMPLAINT**

The Plaintiff, Diana Wills, sues the Defendant, Metropolitan Nashville Board of Public Education, and for cause of action states:

**JURISDICTION AND VENUE**

1. This is an action to recover for discrimination, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*. (the "ADA").

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because the Defendant's principal office is in Davidson County, Tennessee and a substantial part of the events giving rise to the claims took place in Davidson County, Tennessee.

**PARTIES**

4. Plaintiff Diana Wills is an individual resident of Nashville, Tennessee.

5. Defendant is a body politic, with its principal place of business in Nashville, Davidson County, Tennessee. Defendant Board of Education is responsible for the management and control of the schools that comprise the MNPS. Defendant is an "employer" as defined by 42

U.S.C. §12111(5)(A). Defendant also is an "employer" as defined by Tenn. Code Ann. § 50-1-304(a)(2)(A).

**FACTS**

6. Until her recent nonrenewal, Plaintiff Diana Wills ("Ms. Wills") was a teacher employed by the Metropolitan Nashville Public Schools ("MNPS") system. At all times relevant to this Complaint, Plaintiff taught in the math department at John Overton High School ("Overton").

7. Ms. Wills suffers from Generalized Anxiety Disorder and Complex Post Traumatic Stress Disorder ("CPTSD") stemming from chronic trauma and abuse suffered as a child.

8. Symptoms commonly associated with CPTSD include heightened emotional responses, such as impulsivity or aggressiveness. Because of her CPTSD, Plaintiff does not react well to stressful situations and sometimes responds inappropriately.

9. Ms. Wills' conditions substantially limit major life activities including interacting with others, concentrating, thinking, and managing stress responses. Ms. Wills' CPTSD constitutes a disability within the meaning of 42 U.S.C. § 12102.

10. In early November 2024, Ms. Wills disclosed her disability to Overton Assistant Principals Amy Crutchfield and Dr. April Adams during a meeting regarding a student incident.

11. On November 20, 2024, Overton Principal Dr. Kelby Garner sent Ms. Wills an email instructing her to share her existing accommodation file or complete MNPS forms for Workplace Safety.

12. On November 21, 2024, Ms. Wills responded that she was not requesting official accommodations at that time.

13. The following semester, on February 3, 2025, Ms. Wills took a personal day because her children were sick. That afternoon, Overton Assistant Principal Seteria Watkins emailed Ms. Wills demanding she upload an interdisciplinary lesson by the end of that day.

14. On February 4, 2025, Ms. Wills sent an emotional email to Assistant Principal Watkins and Principal Garner about her stress and stated she would not be able to complete the lesson. This email was symptomatic of her PTSD being triggered. Principal Garner responded by threatening a written reprimand for insubordination.

15. The same day, February 4, 2025, Ms. Wills emailed Assistant Principal Watkins and Principal Garner informing them that the work environment and threats were triggering her anxiety and CPTSD and that she would be out the rest of the week.

16. On February 5, 2025, Principal Garner sent an email outlining "next steps" that contained inaccuracies regarding dates and leave types. Ms. Wills corrected the inaccuracies and informed Principal Garner that her inability to complete the lesson was due to her disability, not insubordination, and that her husband was arranging short-term care.

17. On February 8, 2025, Ms. Wills' husband emailed Principal Garner to inform her that Ms. Wills' condition had deteriorated and she needed intensive treatment at Vanderbilt Hospital. He requested a contact in Human Resources regarding leave and disability options.

18. February 10, 2025, Ms. Wills formally submitted an ADA Accommodations Request to the MNPS Workplace Safety office, along with a request for leave. She explained she was entering a Partial Hospitalization Program ("PHP") at Vanderbilt to address her mental health conditions.

19. On February 14, 2025, Ms. Wills began the ten-business-day intensive program at the Vanderbilt PHP.

20. On February 21, 2025, the MNPS Workplace Safety office informed Ms. Wills and Principal Garner that all required paperwork had been provided and Ms. Wills' leave was approved through March 17, 2025.

21. On March 5, 2025, Ms. Wills emailed Principal Garner to inform her she would return on March 17 and requested a meeting to discuss workplace accommodations she might need upon her return. Principal Garner acknowledged receipt of the email but never scheduled the requested meeting.

22. Ms. Wills returned to work on March 17, 2025 as scheduled and worked throughout the remainder of the spring semester. Ms. Wills was not tenured. MNPS renewed her employment contract for the 2025-2026 school year.

23. On April 22, 2025, Assistant Principal Hardin sent Ms. Wills a list of approximately 40 students who failed Ms. Wills' class. Assistant Principal Hardin directed Ms. Wills to change those students' grades, saying the school could not fail them because there was no documentation that their parents had been contacted and informed that they were at risk of failing.

24. Ms. Wills was concerned that changing grades based on "parent contact" and not on actual student performance violated MNPS policy and state law. *See* Tenn. Code Ann. § 49-6-407(c)(1) (prohibiting procedures that establish a minimum grade students can earn for coursework).

25. On April 24, 2025, Ms. Wills contacted the parents of the failing students and informed Assistant Principal Hardin she had done so. She was told Assistant Principal Hardin would complete the grade changes himself.

26. In a series of email exchanges the following month, Ms. Wills explained to Principal Garner why she felt the grade changes were unlawful and unethical.

27. On May 13, 2025, Ms. Wills filed a formal policy violation complaint with MNPS relating to the improper grade changes. Dr. Carl Carter, the Executive Director of High Schools who had directed the changes, was the person assigned to investigate Ms. Wills' complaint.

28. Ms. Wills also filed a complaint with the Tennessee Comptroller of the Treasury concerning the grade changing by MNPS.

29. On July 26, 2025, without explanation, Ms. Wills was moved from the IT Academy to the Health Sciences Academy, where she would be working under the supervision of Assistant Principal Miller-Licht, one of the subjects of Plaintiff's grade-changing complaint).

30. On August 28, 2025, during a Professional Learning Community ("PLC") meeting, Ms. Wills felt dismissed and patronized by the Math Coach. Her CPTSD was triggered, resulting in an inappropriate reaction. Later that day, Assistant Principal Tocarra Cecil confronted Ms. Wills in front of students during class transition about the PLC meeting.

31. On September 2, 2025, Ms. Wills took a sick day due to her mental health. Despite knowing Ms. Wills was out, Assistant Principal Cecil emailed directing her to attend a 7:30 a.m. meeting the next morning to receive a written reprimand.

32. On September 3, 2025, Ms. Wills attended a meeting in which she was given a written reprimand calling her behavior when triggered at the August 28 PLC Meeting "unprofessional and confrontational[.]" A copy of the September 3 reprimand is attached as Exhibit 1.

33. On September 9, 2025, Ms. Wills re-submitted her ADA accommodations request to the MNPS Workplace Safety office.

34. On September 10, 2025, Ms. Wills sent Principal Garner a written response and rebuttal to the reprimand. In the response letter, a copy of which is attached as Exhibit 2, Ms. Wills

expressed regret for the way she acted during the PLC meeting. She explained the way her CPTSD can affect her behavior in stressful situations and requested a meeting to discuss possible workplace accommodations under the ADA. Ms. Wills also shared her intention to apologize to her teammates who were at the PLC meeting.

35. Ms. Wills' team had another PLC meeting on September 11, 2025. There, Ms. Wills attempted to have a restorative conversation with her colleagues, apologizing for her behavior during the August 28 meeting and explaining how her CPTSD influenced her reaction. Principal Garner—who was not a member of the PLC—came to the table and told Ms. Wills she was being "inappropriate." Dr. Garner sat down at the table in an attempt to interfere with Ms. Wills' apology and explanation to her colleagues. Ms. Wills asked Dr. Garner to leave so she could complete her apology. Dr. Garner refused and instead instructed Ms. Wills to leave, effectively removing her from the PLC meeting.

36. That same afternoon, September 11, 2025, Ms. Wills was informed she was being placed on administrative leave (suspension) pending an investigation.

37. MNPS never responded to Ms. Wills' September 9, 2025 renewed ADA accommodations request before suspending her on September 11, 2025.

38. The administrative leave/suspension extended from September 11, 2025 until February 4, 2026, in excess of the 90-day maximum period for a suspension pending investigation under Tenn. Code Ann. § 49-5-511(a)(3).

39. On February 4, 2026, Ms. Wills received dismissal charges accusing her of unprofessional conduct and insubordination in her interactions with Principal Garner on September 11, 2025.

40. On February 9, 2026, Ms. Wills filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC").

41. On February 12, 2026, Ms. Wills, through counsel, requested a hearing on the charges of dismissal pursuant to Tenn. Code Ann. § 49-2-301(b)(1)(EE)(i).

42. On May 1, 2026, Ms. Wills was notified that her contract was being non-renewed and that she was not eligible for rehire.

43. MNPS was aware of Ms. Wills' disability since at least November 2024. MNPS knew that Ms. Wills' behavior on August 28 and September 11, 2025 was symptomatic of her CPTSD. Despite this knowledge, MNPS suspended Ms. Wills, brought dismissal charges against her, and non-renewed her contract for conduct that was a direct manifestation of her disability.

44. MNPS never meaningfully engaged in the interactive process regarding Ms. Wills' February 10, 2025 ADA accommodation request. The Workplace Safety office later informed Ms. Wills her accommodation request was considered "fulfilled" when she returned from leave, despite never having discussed or implemented any workplace accommodations.

45. On May 20, 2026, the EEOC issued a letter stating it would likely not complete its investigation of the charge timely and notifying Ms. Wills of her right to sue. A copy of the notice is attached as Exhibit 3.

46. Ms. Wills has fulfilled all administrative prerequisites and conditions precedent to the institution of this action.

**COUNT I – DISABILITY DISCRIMINATION UNDER THE ADA**

47. Plaintiff's CPTSD constitutes a disability under 42 U.S.C. § 12102.

48. Defendant was aware of Plaintiff's disability when it suspended her, brought dismissal charges against her, and then non-renewed her.

49. Plaintiff was otherwise qualified for her position when she was suspended, subjected to dismissal charges, and non-renewed.

50. Plaintiff suffered an adverse employment action when she was suspended, subjected to dismissal charges, and non-renewed.

51. Defendant discriminated against Plaintiff based on her disability by suspending her, bringing dismissal charges against her, and non-renewing her employment contract.

52. As a direct and proximate result of the discriminatory actions of Defendant, Plaintiff has suffered and continues to suffer damages, including without limitation mental and emotional anguish, loss of pay, and loss of prospective benefits, because of Defendant's discriminatory conduct.

53. Defendant's discrimination against Plaintiff was intentional and knowing.

**COUNT II – FAILURE TO ACCOMMODATE UNDER THE ADA**

54. Plaintiff's CPTSD constitutes a disability under 42 U.S.C. § 12102.

55. Plaintiff was qualified for the job of teacher in the math department, with or without reasonable accommodation.

56. Plaintiff first requested an accommodation for her disability on February 10, 2025, when she formally submitted an ADA Accommodations Request to the MNPS Workplace Safety office.

57. The Workplace Safety office deemed the request "fulfilled" upon her return from leave without discussing or implementing any workplace accommodations.

58. Plaintiff again requested accommodations on March 5, 2025, when she emailed Principal Garner regarding the conclusion of her treatment and requested a meeting to discuss workplace accommodations she might need upon her return.

59. Principal Garner never scheduled the requested meeting to discuss Plaintiff's workplace accommodations.

60. Plaintiff made a third request for an accommodation on September 10, 2025, when she sent Principal Garner a letter in response to the reprimand. (*See* Exhibit 2, p. 2).

61. Principal Garner did not respond to Plaintiff's third request for a workplace accommodation.

62. Defendant failed to engage in the interactive process in response to Plaintiff's multiple requests for an accommodation.

63. Defendant's failure to engage in the interactive process constitutes a violation of the ADA. Had Defendant engaged in the interactive process and provided reasonable accommodations, Plaintiff's disability-related conduct that Defendant used as the basis for her suspension, dismissal charges, and non-renewal could have been avoided. Defendant's failure caused Plaintiff damages, including without limitation mental and emotional anguish, loss of pay, and loss of prospective benefits.

**COUNT III – RETALIATION UNDER THE ADA**

64. The ADA prohibits retaliation against an individual who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the ADA.

65. Plaintiff engaged in activities protected by the ADA when she requested workplace accommodations for her disability on multiple occasions beginning February 10, 2025 and continuing through September 2025, and when she filed her Charge of Discrimination with the EEOC on February 9, 2026.

66. Defendant was aware of both Plaintiff's requests for accommodation and the filing of her Charge of Discrimination.

67. Defendant took adverse actions against Plaintiff when it suspended her on September 11, 2025, brought charges of dismissal against her on February 4, 2026, and non-renewed her employment contract on May 1, 2026.

68. Upon information and belief, the adverse action of non-renewal was motivated by Plaintiff's filing of the Charge of Discrimination with the EEOC.

Premises considered, Plaintiff prays:

1. That process issue and be served upon Defendant requiring it to answer;

2. That this case be set for trial;

3. That Plaintiff be granted a judgment for discrimination based on her disability in violation of the ADA;

4. That Plaintiff be granted a judgment for failure to accommodate in violation of the ADA;

5. That Plaintiff be granted a judgment for retaliation in violation of the ADA;

6. That Plaintiff be awarded back pay including interest, front pay, and compensatory damages in an amount to be determined at trial;

7. That Plaintiff be awarded her costs and reasonable attorneys' fees; and

8. For such further and general relief as the equities of this cause may require and the Court may deem just and proper.

/s/ Richard L. Colbert
Richard L. Colbert, No. 9397
Sarah M. Ingalls, No. 38383
THOMPSON BURTON PLLC
One Franklin Park
6100 Tower Circle
Suite #200
Franklin, TN 37067
(615) 465-6000

rcolbert@thompsonburton.com
singalls@thompsonburton.com
*Attorneys for Plaintiff Diana Wills*